18-17-99 TQ Delta, LLC against DISH Network, LLC. Mr. Chitlak. Good morning, your honors, and may it please the court. The board's finding that the claims are unpenetrable must be reversed. The board committed at least two errors in finding the claims unpenetrable. On page 30 of the blue brief, you say that the definition, which you provide from the Merriam-Webster dictionary, without meaning to initialize, and I'm picking up the quote again, does not suggest the absence or lack of only a part of something. Where is that in the record? This is not in the record. We put in this the definition of without in the appeal brief because the construction of without meaning to reinitialize was never at issue below. So it wasn't raised before the board? The parties agreed that without needing to reinitialize, in the petition and in Paterno's response, the parties agreed that without needing to reinitialize means avoiding all the only at the final written decision stage that the board adopted a construction that said that without needing to reinitialize means. Well, I didn't read the record that way. You're saying the parties agreed below that it included all steps? Without needing to reinitialize meant avoiding all steps of initialization. Where did the parties agree to this? Dish's expert, Dr. Huarty, when he applied the Bowie reference to the claim, he said that Bowie's teaching teaches the fact that you negate doing any notion of initialization. The question is, where did the parties agree to this? There was a tacit agreement, your honor. We litigated. Tacit? There was no dispute based on the petition that the parties agreed that without needing to reinitialize meant avoiding all the steps of initialization. That's what the patent claimed. As opposed to avoiding any one step? Yes. The patent specification is very clear. It says when a device comes out of... Well, let me ask you this. On page 37 of the red brief, Dish says, quote, because the 404 patent does not require storing all of the parameters during the first initialization, the transceiver of the 404 patent must perform at least some reinitialization steps to determine the missing parameters that are required for reliable communications. And it cites to the 404 patent at column 8 lines 1 to 13. They also say at page 37 in the red brief, it's suggesting otherwise would mean that the 404 patent's transceiver skips the reinitialization for risk having less and likely much less than reliable communications. Do you disagree with column 8 at line 5? It says on waking up from sleep mode, the CPE transceiver can begin transmitting immediately. It says immediately, which means you cannot be performing any steps of initialization. On page 27 of the PTAB's opinion, the PTAB says your argument, and I'm quoting, your argument is predicated on a mischaracterization of Boeing. And that, again, I'm quoting, counsel argued at the hearing that Boeing uses may only to mean permitted at a point in time. Each example may not occur, but that is not persuasive because Boeing uses may to mean might or may or may not. Is that true? What the PTAB says? It's not true in view of Boeing clearly state that Boeing does reinitialization every time. If it's not true, at 28 of the PTAB's opinion, the PTAB says that you argue, quote, Boeing does not teach without, does not teach, and then internal quote, without needing to reinitialize, close internal quote, because some reinitialization does occur when Boeing exists, exits low power mode and resumes full power mode. Does Boeing teach that the additional handshaking may be required, or does it teach that loop characteristics are redetermined upon the Boeing device coming out of low power mode? It, yes, it teaches redetermining loop characteristics on coming out of low power mode every time. And then it goes on to state it may do additional handshaking, but at a bare minimum, the Boeing device, when it comes out of, out of its low power mode, always redetermines loop characteristics. It, it always does. And then it may do some additional handshaking. That, that's, that's, that's what the Boeing pattern says. But, but Boeing also specifies that loop characteristics are stored, right? Yes. Well, why, why store if they have to recharacterize or recompute? Because, because the loop characteristics change because of things like temperature. You have a better, you have a better starting point. When you store your loop characteristics, you have a better starting point, so you can reduce the time it takes to redetermine your loop characteristics. If the loop characteristics, the stored characteristics are acceptable, then you don't need to recompute. But the only way to find that. Why they do that? The only way to determine that your loop characteristics have changed is to redetermine loop characteristics. How do you know if the phone line characters have changed unless you don't redetermine it? Does Boeing teach that additional handshaking is required in all instances of, of exiting low power mode? Additional, additional handshaking may be required, but the prior step, which is doing the basic handshaking, is always required. It says it reduces the time for doing that. Does, does that include all the steps? Yes, that does. That, that, that is, that is our position. It, it includes all the steps. Then what's the point of Boeing? The point of Boeing is it shortens the time it takes to return to full power mode, and it shortens it by storing these loop characteristics and using that as an initial estimate to reduce the time it takes to characterize the loop. That's how Boeing saves time. The PTAB says at JA30 to 31 that you argue that, quote, the 404 patent discloses never performing reinitialization. Is that still your position? Can you repeat your question, Your Honor? Okay, sorry. At 30 and 31, in, in, in their opinion, the PTAB says that you argue that, quote, the Is that your position? Yes. Still? Yes. Okay. At column eight, lines 24 to 35, it discloses that, quote, reinitialization must be performed, steps 104 and 108, before user data transmission occurs. Correct? No. What it says is in certain situations, Boeing may come up, transmit a few test frames, which means it's in full power mode. It's not done initial, initialization. It transmits a few test frames. If the, if the test frames are successfully received, it can start transmitting user data. If the test frames are not successfully received, then it may have to do reinitialization. But the transmission of test frames happens in full power mode, and it gets there by avoiding all the steps of reinitialization. Okay. Does Boeing teaching that its loop is inactive during low power mode imply that all circuitry must be shut off during low power mode to achieve its purpose? All circuitry in Boeing is shut off except for the idle signal detector, I believe, that is, that is there to detect the wake up signal. So Boeing does recognize there's need for some circuitry to remain on? Yes. Okay. But, yes. So getting back to my prepared argument, the board committed at least two errors in finding the claims unpalatable. First, the board adopted an incorrect construction for the claim term without needing to reinitialize and found that Boeing taught without needing to reinitialize. Second, the board's obviousness conclusion is wrong because the board discarded competent expert testimony and evidence that showed that the combination of references would result in an inoperable device. Specifically, the device, if you combine Boeing with Vanzelheim, would not have a low power mode. These errors appear at Appendix 29 and Appendix 33 of the final written decision. Both of these errors invite de novo review. On the issue of claim construction, claim six recites in relevant part exit from the low power mode and without needing to reinitialize the transceiver. The board interpreted the limitation without needing to reinitialize and found the limitation was satisfied if any step is avoided and does not require that every step of initialization be avoided. This construction is clearly erroneous because it conflicts with the plain meaning of the phrase what it means to without needing to reinitialize and the disclosure of the 404 patent. Without needing to reinitialize means avoiding all steps of initialization. As the patent explains, the invention allowed a DSL modem to return to full power mode without reinitialization. And I quote, the CP transceiver can begin transmitting immediately. The court should reverse the board's construction. Further, the board's construction contradicted, and we went over this, contradicted the party's tacit understanding that without needing to reinitialize means avoiding all steps of initialization. The board instituted the IPR based on this understanding. That's at appendix 229. DISH's expert, Mr. Harty, stated this expressly at appendix 571. They applied the Bowie reference. When they applied Bowie to the claim, they said, DISH said, Bowie negates doing any step of initialization. You determine the scope of the prior art when you apply it to the claim during the obviousness inquiry. Clearly, because they said Bowie negates doing any step of initialization, DISH assumed that that means, without needing to initialize, means avoiding all steps of initialization. That's your evidence, Brett? Yes. Okay. Are we ready to hear from the other side? I have one more point to make. That goes to the issue of there's no motivation to combine. We provided expert testimony that said, if you combine Bowie with Vanselheim, you will end up with a device that doesn't have a low power mode. The claim requires a low power mode. Our expert, Dr. Christian, put in about four pages of detailed technical explanation as to why Bowie, when combined with Vanselheim, would result in an inoperable device. DISH did not have a reply expert declaration. The board, on its own, set aside TQ Delta's expert testimony and played a role of the expert and said, we do not believe that what TQ Delta's expert says is persuasive. Instead, we are going to apply our own understanding of why the device would be operable. That's clearly improper. DISH's reply... I think as a fact-finding body, they have the ability to disbelieve your expert, do they not? Yes, but they have to view the evidence. They have to view evidence that detracts from the decision as well as supports the decision. There was no evidence from the other side that supported the decision that you would combine these and get a device that would actually work. The only evidence of record was the evidence that TQ Delta put in that detracts from the ultimate finding of obviousness. And it's pretty well established in this code that in the context of a contested case, it is impermissible for the board to base its factual findings on its expertise rather than evidence and record. All there was... You realize you're using up your response time. Okay. All right, we'll save your response time. Ms. Keefe. Good morning, Your Honors. Your Honors, what we're hearing... Was there a tacit understanding? There was not, Your Honor. In fact, quite the opposite. What DISH did when it applied BOEY was it found that even under the narrowest construction, that being that no reinitialization may occur, that BOEY disclosed it. Because BOEY disclosed embodiments in which absolutely no handshaking, no reinitialization information occurs whatsoever. This is an argument that the appellant has made over and over again down at the board. They constantly said that the word may engage in additional handshaking meant must. The board rejected that argument absolutely with substantial evidence. They stated it was a mischaracterization. They did, Your Honor. And in fact, they said in detail why it was a mischaracterization. In the appendix at pages 27 through... Sorry, 25 through 27, they actually explained why may meant might or might not. And they specifically pointed to the section in BOEY at column six that indicated when handshaking might occur. Maybe when temperatures have changed, when situations change, you might need to handshake. That implies otherwise you do not. And that's what the board used as a factual finding. Then when it turned in page 28 of the appendix and page 29, et cetera, to the specific limitation of without need for reinitialization, it referred back to its original discussion on pages 25 through 27 of exactly why might meant may or may not, not must. And that is supported not only by the facts of BOEY itself, which the board cites to, but the board also cites to the petitioner's reply at pages 13, 15, and 16, which also cite to the expert declaration. Therefore, the board had substantial evidence to support its finding that BOEY discloses never reinitializing. One of the other things that I think confuses everyone in this case is the fact that this is a negative limitation. The limitation requires that you are allowed to return to your startup mode, return to full power, without the need for reinitialization. When the board did its secondary argument on pages 29 and 30 of the appendix, what the board was simply saying is, I am now going to look at your secondary argument. In your secondary argument, TQ Delta, you say, well, as long as you do one of the things, you're not avoiding the whole thing. The best analogy I can come up with is someone telling me that I can eat lunch as long as I eat lunch without eating a sandwich. And the sandwich has lots of layers to it. It has tomatoes, lettuce, bacon, and bread. Well, I decide that I'm dieting, and so I'm going to simply remove the lettuce from the sandwich, and I'm going to eat only the lettuce. No one would understand me to have eaten the sandwich. And that is exactly what the board is saying, that the normal understanding of without needing to do this whole thing, this reinitialization, if you're only doing one of the things, you're not doing the whole step. So the board is actually applying exactly what TQ Delta had said throughout the course of the entire proceeding, which is all means all. And in fact, throughout its briefing, in the blue brief, for example, at the page. I'd like you to address the questions I asked your opposing counsel. Please. About Column 8 of the Foro Cortex. Absolutely, Your Honor. We believe that Column 8, and in fact- And specifically what I'm interested in is what I underlined, which is the words reinitialization must be performed, preceded by otherwise. That's correct, Your Honor. And so what they're saying in the 404 patent itself, is they're saying there may be instances, there may be times when you do need to reinitialize. For example, the test ping said, I'm different. I have changed exactly what's going on with me, so I need to start over again as well. This is exactly the same situation that happens in the which is Appendix 1184. There, what Bowie is saying is, for example, if you've tested and you found that the temperature changes, you may need to do additional handshaking. Start over. That is no different from anything that's happening in the 404 patent in Column 8. And that exactly means that the two patents are accomplishing exactly the same thing in exactly the same way. I will store information. I'll check to make sure nothing's changed. If nothing's changed, I'll use that information. If things have changed, I'll go back to zero and start over. And thereby, saving time, saving power, which is what both patents do and what both patents attempt to accomplish. The last point raised by my learned opposing counsel was that there was no evidence in the record to support the combination with Vanziligahem. Vanziligahem and Bowie are which you might end up with competing frequencies. But as the board specifically held, that's not enough. One of ordinary skill in the art has to be one of ordinary creativity. One of ordinary creativity, looking at the situation, realizing that Vanziligahem says, if I send my pilot signal in at 16 hertz, great. I know exactly what that signal is going to be. Bowie says, I'm going to send that signal, that synchronization signal anywhere above four hertz. In fact, it could even be an additional signal. And this is all in the Bowie reference in column two at appendix 1182, where Bowie says the resume signal may be an AC signal greater than four kilohertz or maybe a multitone AC signal. Therefore, one of ordinary skill using ordinary creativity would understand that there's a wide range other than 16 hertz that can be utilized in a combination of Bowie and Vanziligahem. And that's what the board found when it rejected the argument that there is one possible scenario in which there might be incompatibility. Talk about the interplay of the ANSI standard as well, because it overlaps everybody. You mean the standard that... ADSL, yeah. The ADSL, it does. It overlaps everything, which means that one of ordinary skill would understand everything about ADSL to understand that there is a wide range of frequencies that can be used. And therefore, again, using one of ordinary creativity who understands how ADSL works, he would understand that he doesn't have to use just 16 kilohertz. And their expert didn't even say this is the only way that it would work. He said there might be a possibility of a coincidence. Sorry about that. But that's not enough to teach away. In fact, quite the opposite was found by the board and the substantial evidence of Bowie itself, saying I can use multiple frequencies. The ANSI standard, which was also in the combination, making everyone understand that there are multiple frequencies that can be used. And then the teaching of Vanziligahem that says, and be careful, I'm going to do my resume signal at 16. It actually helps the combination because it specifically tells you what to avoid. If your honors have no other questions. No questions. We very much appreciate your time and attention. Thank you. Add appendix 4411. 4411, okay. This is a transcript from the deposition of William Leo Hoarty, DISH's expert. He was asked, you do not contest that Bowie teaches merely reducing the time needed to determine loop characteristics. And this is initialization. I can only agree that that is what it says. Question. Bowie does not teach, don't redetermine loop characteristics. Answer. I think a procedure would know if he were to teach that that would be incorrect and it could not function as a circuit. And one would not put this, one would not learn from this patent if that was stated, because it's not possible to do that. DISH's own expert conceded that Bowie reinitializes every time. It redetermines loop characteristics every time. There isn't a case where Bowie doesn't redetermine loop characteristics. I think you're reading a little bit into that brief statement. But move on. There are other points I think that might be important. Regarding the inoperability argument, DISH's counsel refers to the pilot signal. Our expert doesn't talk about the pilot signal. He says, Dr. Christian says, the synchronization symbol, which is a wideband signal, which occupies the entire bandwidth, that's the one which would cause the inoperability issue. It's not the pilot signal that he said that would cause the inoperability. And this is set forth at 4315. I'm sorry, 4315? Yes, 4315, all the way to Appendix 4319. So we provided expert testimony that Vanzelheim's synchronization symbol would cause the Bowie device to consistently keep waking up. DISH's attorney argument was, you can move the pilot signal somewhere else. These are like two ships passing in the night. Our expert said it's the synchronization symbol, which is a wideband signal, which occupies the entire bandwidth that comes every 69 frames that would cause the Bowie device to wake up. DISH's attorney argument focused on a completely, an issue that wasn't even raised. And the board took the lead with DISH's attorney argument and discarded TQ Delta's expert testimony on this point. And that's all I have, Your Honor. On claim construction, the claim itself recites storing only one parameter, at least only one parameter. Yes. But your argument would require that all parameters be stored to avoid reinitiation, correct? The patent does list the parameters that are required to be stored, but the claim doesn't have to cover, does not have to cover every piece of the invention. It's not, it's not a picture claim. It's telling you that you need to store the bits and gains table and you need to maintain synchronization, which is an important part of the... But if reinitiation means what you argue it means, you'd have to store them all, all the parameters, right? No, based on the bits and gains... Avoiding reinitiation. The bits and gains table is what is used to start transmitting data. And because you've saved the data, you can adjust your amplifiers. You can right away set your bit loading for the carriers. And since you've already been maintaining synchronization during the low power mode, you can begin transmitting immediately without needing to reinitialize. Okay. Thank you.